[No. 46800. En Banc. September 18, 1980.]

JAMES C. GRAVES, *Petitioner,* v. P. J. TAGGARES CO., *Respondent.*

*John E. Calbom,* for petitioner.

*Reed, McClure, Moceri & Thonn, P.S.,* by *William R. Hickman,* for respondent.

BRACHTENBACH, J.—How far may an attorney go in making stipulations or concessions on behalf of his client without that client's express or implicit knowledge, approval or acquiescence? Broadly stated, that is the question in this case.

An intersection collision between two trucks resulted in injuries to one driver, plaintiff Graves, and death of the other driver Rodriguez. Plaintiff sued a number of persons including defendant Taggares. A claim of $850,000 against defendant was based on an allegation that the deceased driver was an employee of defendant Taggares.

We sketch the facts here; details later. Defendant Taggares' insurance company retained Spokane attorney Brian B. Kennedy to represent its insured. He filed a notice of appearance and other pleadings. Ultimately a summary

judgment was entered holding that the deceased driver was an employee or agent of defendant Taggares.

The case was set for jury trial; defendant attorney Kennedy wanted a continuance. The jury demand was withdrawn; a number of stipulations made. A nonjury trial was held. The court awarded plaintiff $131,200. The defendant Taggares and its insurer were unaware of these events until the insurer was garnished.

After change of counsel, defendant Taggares moved to vacate both the summary judgment and the ultimate judgment. The motion was denied. Appeals were taken. The Court of Appeals remanded for a jury trial on damages. *Graves v. P.J. Taggares Co.*, 25 Wn. App. 118, 605 P.2d 348. (1980). We too remand for trial, but on a broader base.

To put this case in the stark reality of what the defense attorney did or did not do, we summarize these elements of this case:

1. Liability of the insured, Taggares, was dependent upon a relationship with the deceased driver which would impose legal liability.

 a. Plaintiff moved for summary judgment on this issue. Defendant's attorney filed nothing and did not appear although he called the trial judge on the day of argument, apparently ex parte, and raised some legal issue about which his deposition is extremely vague.

 b. Defendant's attorney did not advise his client or its insured of the summary judgment motion.

 c. Defendant's attorney did not advise his client or its insured of the granting of the summary judgment on this critical issue.

2. Defendant's attorney, faced with an $850,000 prayer, with primary coverage of $100,000 and an excess carrier, did not depose plaintiff.

3. Defendant's attorney did not advise client or carrier of the trial date.

4. Defendant's attorney did not advise client or carrier of necessity of (because he claimed on date set for jury trial

that he was unprepared), conditions of, or granting of continuance.

5. At trial to court, defendant's attorney presented no evidence, legal or medical, in what was essentially a low back injury case.

6. Defendant's attorney did not advise client or carrier of memorandum opinion of trial court awarding plaintiff $131,200 damages.

7. Defendant's attorney did not advise client or carrier of the entry of findings of fact, conclusions of law and judgment in accordance with the memorandum opinion.

Such a course of events is extraordinary to say the least. To do all of that without knowledge, authority or acquiescence is even more startling.

The question then is what we do about it. We have in every case a complex set of relationships. A lawyer may have carte blanche authority or virtually none. A client may be highly sophisticated and appreciate fully the alternatives and risks or may be totally ignorant of the significance of any tactical move. When primary insurance companies and excess carriers are involved, there are significant and sometimes subtle, sometimes direct potential conflicts.

As a practical matter, opposing counsel, absent knowledge of the propensities of his opponent, must grant certain trust. The trial court should not have to be provided with written authority by the client or its insurer for every representation made by counsel. After all, those before the court are officers of the court.

From these events and relationships, three questions emerge. First, was the summary judgment on vicarious liability properly granted? Second, what is the extent of the attorney's authority and how does it factually align with this case? Third, what costs are to be imposed when vacating a judgment?

Before dealing with the issues, we make it clear that the stipulations and conditions to which the defense attorney agreed were in no way extracted or even suggested by the trial judge. The case had been set for some 6 weeks, notice

had been given to the lawyers, the jury panel was present along with plaintiff's attorney, plaintiff and his witnesses. The trial judge indicated that the court, the plaintiff and the jury panel were ready to go. The defense attorney requested a continuance solely on the ground that he was unprepared to try a case that had been started a year before. He then asked for time to consult with plaintiff's counsel. Counsel then, outside of the presence of the trial judge, agreed upon the challenged stipulations. The plaintiff's attorney and the court meticulously recorded thereafter the intent and effect of those agreements.

As to the first issue, the defendant's attorney did not have authority to stipulate to the defendant's vicarious liability. This question was previously decided by the trial court's order of partial summary judgment. The propriety of this order is raised by the defendant's original appeal. The Court of Appeals ruled that the summary judgment was proper because the adverse party "merely rested on its pleadings, and did not set forth any evidence of a material fact." 25 Wn. App. at 122.

■ It is correct that once the moving party has met its burden of offering factual evidence showing that it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *LaPlante v. State,* 85 Wn.2d 154, 158, 531 P.2d 299 (1975). But "[i]f the moving party does not sustain that burden, summary judgment should not be entered, irrespective of whether the nonmoving party has submitted affidavits or other materials." *Jacobsen v. State,* 89 Wn.2d 104, 108, 569 P.2d 1152 (1977); P. Trautman, *Motions for Summary Judgment: Their Use and Effect in Washington,* 45 Wash. L. Rev. 1, 15 (1970).

■ In this case, the plaintiff submitted by affidavit a description of the incidents of the relationship between the defendant and the deceased truck driver and asserted that the relationship was one of agency as a matter of law. Whether a relationship is one of agency or independent contractorship can only be decided as a matter of law where

there are no facts in dispute and the facts are susceptible of only one interpretation. *Larner v. Torgerson Corp.,* 93 Wn.2d 801, 804, 613 P.2d 780 (1980); *Hollingbery v. Dunn,* 68 Wn.2d 75, 411 P.2d 431 (1966). Although the defendant did not dispute the facts presented by the plaintiff, those facts are not susceptible of only one interpretation. All of the facts submitted by the plaintiff are consistent with the conclusion that the driver was a self–employed independent contractor. The question of employment or agency should have been left to the jury. Summary judgment should not have been granted because the moving party did not meet his initial burden of proof.

■ The general rule regarding an attorney's authority to bind his client to stipulations or compromises in the conduct of litigation is tersely stated in 30 A.L.R.2d 944, 947, § 3 (1953): "an attorney is without authority to surrender a substantial right of a client unless special authority from his client has been granted him to do so." This rule is supported by the many cases listed in the A.L.R. annotation as well as many cases from this jurisdiction. *E.g., Barton v. Tombari,* 120 Wash. 331, 207 P. 239 (1922); *Morgan v. Burks,* 17 Wn. App. 193, 563 P.2d 1260 (1977); *In re Coggins,* 13 Wn. App. 736, 537 P.2d 287 (1975); *Grossman v. Will,* 10 Wn. App. 141, 516 P.2d 1063 (1973); *In re Houts,* 7 Wn. App. 476, 499 P.2d 1276 (1972).

As an attorney, he is impliedly authorized to enter into stipulations and waivers concerning procedural matters to facilitate the hearing. However, in his capacity as attorney, he has no authority to waive any substantial right of his client. Such waiver, to be binding upon the client, must be specially authorized by him. As stated in *Wagner v. Peshastin Lumber Co.,* 149 Wash. 328, 337, 270 P. 1032 (1928), "It will be readily admitted that an attorney without special authority has no right to stipulate away a valuable right of his client." This rule is also stated elsewhere. *Linsk v. Linsk,* 70 Cal. 2d 272, 449 P.2d 760, 74 Cal. Rptr. 544 (1969); *Jackson v. United States,* 221 F.2d 883 (D.C. Cir. 1955); *De Long v. Owsley's Executrix,* 308 Ky. 128, 213 S.W.2d 806 (1948); *Fresno City High School Dist. v. Dillon,* 34 Cal. App. 2d 636, 94 P.2d

86 (1939); *Laurent v. Costa,* 61 A.2d 804 (D.C. Mun. Ct. App. 1948); 1 E. Thornton, Attorneys at Law, §§ 258, 263 (1914).

*In re Houts, supra* at 481.

This rule is necessary to protect clients from possibly serious consequences arising from a misunderstanding between the client and the attorney. It assures that clients will be consulted on all important decisions if they so choose. This rule is consistent with ethical considerations 7–7 and 7–8 in the Washington Code of Professional Responsibility.

> In certain areas of legal representation not affecting the merits of the cause or substantially prejudicing the rights of a client, a lawyer is entitled to make decisions on his own. But otherwise the authority to make decisions is exclusively that of the client . . .

(CPR) EC 7–7 (1972).

Comment on *Haller v. Wallis,* 89 Wn.2d 539, 573 P.2d 1302 (1978), is required. There we stated at page 547 that

> once a party has designated an attorney to represent him in regard to a particular matter, the court and the other parties to an action are entitled to rely upon that authority until the client's decision to terminate it has been brought to their attention . . .

This is the general rule. But in the same opinion (*Haller v. Wallis, supra*), we also observed at page 545 that "consent [to a surrender of substantial rights] by an attorney contrary to his client's instructions may be ground for vacating such a judgment . . ." In that case the attorney did not misrepresent his authority. The trial court was aware of the objections of the client's guardian to the proposed settlement, but decided under its own authority that the settlement was nevertheless in the best interests of the minor client. *Haller,* at 548–49.

The difficult question is what is a "substantial right". In this jurisdiction, substantial rights have been held to have been compromised by surrendering property without secur-

ing a rescission of the contract to purchase, *Barton v. Tombari, supra*; settlement of a tort cause of action, *Morgan v. Burks, supra*; not recording the testimony necessary for review in a parental deprivation proceeding, *In re Coggins, supra*; stipulating to a contingent consent judgment, *Grossman v. Will, supra*; stipulating that the client is mentally ill without a hearing, *In re Houts, supra.*

In this case, whether the defendant was vicariously liable for the actions of the deceased truck driver is a critical issue. The driver may have been an independent contractor rather than an agent and, according to depositions in the record, the driver may have been fired from his employment before the accident. Since liability turns on this issue, the defendant has a substantial right to have it tried. Stipulation No. 6 admitting vicarious liability is invalid since the attorney did not inform the defendant or obtain its consent to this stipulation.

The nature and extent of the plaintiff's injuries is also a critical issue. The seriousness of low back pain is often difficult to objectively demonstrate or deny. Stipulations Nos. 2 and 10 are also invalid since they compromised the substantial right to present medical evidence where large variations in damages depend upon this testimony.

We agree with the Court of Appeals that stipulation No. 1 withdrawing the jury demand without the defendant's consent is also invalid as the right to a jury trial is a substantial right. CR 38(d) provides that a "demand for trial by jury . . . may not be withdrawn without the consent of the parties." CR 39(a) provides: "When trial by jury has been demanded . . . [t]he trial . . . shall be by jury, unless (A) the parties or their attorneys of record . . . consent to trial by the court sitting without a jury". The effect of these rules is that the client must specifically consent to the withdrawal of a jury demand but that this consent may be communicated to the court by the client's attorney without the actual appearance of the party or the submission of a signed statement.

In the context of this litigation, the remainder of the stipulations did not involve substantial rights and were binding on defendant.

 The question then arises as to who should pay the expenses of litigation which have been needlessly incurred. The plaintiff certainly should not suffer as a result of the errors of defendant's attorney. The Court of Appeals therefore directed that terms should be assessed against the defendant to place the plaintiff in the same position he would be in had the efforts at litigation which have been nullified never been conducted. We agree. Where a defendant requests vacation of a default judgment, the defendant must show that no hardship will result to the plaintiff, and the defendant is often required to pay the plaintiff's added expenses and attorney's fees. *See, e.g., White v. Holm,* 73 Wn.2d 348, 438 P.2d 581 (1968). The same approach is appropriate in this type of case.

The Court of Appeals also required that the defendant pay the county's expenses incurred in assembling the unused venire. The defendant asserts that this is contrary to *Johnson v. Dahlquist,* 124 Wash. 267, 214 P. 157 (1923). That case held that a continuance cannot be conditioned upon the requesting party paying the costs for the unused venire. There was no such condition imposed on granting a continuance in the case at bar. Instead, the payment is a condition for vacating a judgment. We affirm the Court of Appeals on this issue. The county should not pay the costs of the errors of defendant's attorney.

The case is remanded for trial on all issues, including vicarious liability, except those issues resolved by the stipulations which remain valid. Costs and terms are to be assessed against the defendant.

UTTER, C.J., ROSELLINI, STAFFORD, WRIGHT, HOROWITZ, DOLLIVER, and HICKS, JJ., and RUTTER, J. Pro Tem., concur.